UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Joseph Rodek | : | Case No.: 24-cv-3423 |
| Plaintiff | : | **COMPLAINT** |
| v. | : | |
| Matrix Absence Management; Office of Employee Benefits Of the Federal Reserve System | : | |
| Defendants | : | |

Plaintiff, Joseph Rodek, for his Complaint against Matrix Absence Management ("Matrix") and Office of Employee Benefits of the Federal Reserve System ("Federal Reserve") (collectively, "Defendants") states as follows:

1. Mr. Rodek is an individual who resides in Warwick, Maryland and who is or was a participant in a long-term disability income plan ("the Plan") created by Federal Reserve, amended and restated as of January 1, 2013.

2. The Plan is self-funded by the Federal Reserve but governed by the terms of a group long term disability insurance policy Matrix issued to the Reserve (the "Policy").

3. Matrix was the administrator for all long-term disability claims filed under the Policy.

4. Upon information and belief, Matrix is part of the Tokio Marine Group, a foreign company with offices in New York, New York.

5. Matrix acts as the plan administrator and/or fiduciary of the Plan for purposes of benefit determinations and payments made pursuant to the Policy.

6. Mr. Rodek brings this action to recover group long-term disability benefits under the Plan and Policy. This Court has subject matter jurisdiction over this action, and it may assert personal jurisdiction over Defendants because diversity exists and the subject controversy exceeds $75,000.

**Claim for Relief**

7. The Policy provides that the Reserve will pay long term disability benefits to participants who are participants under the Plan.

8. Under the Policy, disability is defined as, for the first 24 months of benefits, the inability to perform one's own occupation, and after 24 months, the standard of disability broadened to the inability to perform any occupation.

9. Mr. Rodek, at the age of 33, underwent a multilevel cervical fusion and filed claims for disability benefits under the Plan as well as with the Social Security Administration ("SSA"), both of which approved his claims.

10. Thereafter, Mr. Rodek undertook an extensive treatment regimen yet his pain persisted.

11. Mr. Rodek received substantial treatment from all modalities of medicine from physical therapy to pain medication to eastern medicine, yet his pain persisted.

12. Following the change in definition of disability under the Plan from own occupation to any occupation, after which Matrix continued to pay Mr. Rodek benefits, Mr. Rodek experienced worsening back pain/leg pain and his overall condition deteriorated.

13. Mr. Rodek's neck surgeon and Matrix's medical reviewers agreed that Mr. Rodek reached his maximum baseline improvement somewhere between late 2014 and early 2015, yet his pain persisted.

14. Subsequently, Mr. Rodek underwent a multitude of imaging studies of his spine, which evidenced disc degeneration, reduced T2 nuclear signal intensity, disc bulges/protrusions (some of which encroached on neural foramen and caused nerve root impingement), facet arthrosis, stenosis, and more.

15. Dermatome pathways corresponded with Mr. Rodek's subjective complaints – complaints which were accepted by his providers, including Dr. Sama and Physical Therapist Daniel Rosman, following hundreds of appointments.

16. Mr. Rodek also treated with several other providers all of whom documented Mr. Rodek's battles with pain as well as his corresponding functional issues.

17. Matrix continued to pay Mr. Rodek disability benefits under the any occupation standard nearly 667 days following his admitted maximum improvement. Subsequently, Matrix ordered an IME by Dr. Walter Roche who found Mr. Rodek suffered from no restriction whatsoever. Matrix denied his claim without any evidence of Mr. Rodek's improvement based upon Dr. Roche's report, which contradicted the substantial evidence and attestations in the file, as well as Mr. Rodek's attendance at a continuing education course, which Mr. Rodek took to maintain his CPA license as he one day wants to return to his career.

18. Mr. Rodek appealed this adverse benefit determination and Matrix reversed its decision, finding Mr. Rodek disabled from any occupation.

19. Matrix continued to pay Mr. Rodek benefits until April 1, 2022, at which time it terminated Mr. Rodek's claim as it decided that, despite no evidence of improvement, the medical findings no longer supported Mr. Rodek's total disability.

20. Mr. Rodek timely appealed the termination.

21. Matrix upheld its determination.

22. Mr. Rodek became disabled under the Policy in 2011.

23. Mr. Rodek exhausted his condition precedents under the Policy and Plan.

24. As a result of the foregoing, Mr. Rodek has suffered a loss in the form of unpaid benefits.

25. Mr. Rodek is entitled to a judgment against UNUM in the amount of the unpaid long term disability benefits under the Policy and Plan.

26. Mr. Rodek is also entitled to prejudgment interest and an award of attorney's fees in an amount to be proven.

WHEREFORE, Plaintiff, Mr. Rodek, requests the Court grant him the following relief from Defendants:

a. A judgment in the amount of all benefits due under the Plan/Policy plus prejudgment interest;

b. An order reinstating his benefits and ordering that they be paid through coverage under the Plan and Policy.

c. His costs and attorney's fees; and

d. All other relief the Court may deem proper.

Dated: May 3, 2024

/s/ Andrew S. Davis
Andrew S. Davis, Esq.
Davis Law, LLC
PO Box 17887
Portland, ME 04112
andrew@erisabenefitlawyer.com